IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN ALLEN, #A0116769, | ) CIV. NO. 15-00152 DKW/RLP |
| Plaintiff, | ) ORDER DISMISSING COMPLAINT |
| | ) WITH LEAVE TO AMEND |
| vs. | ) PURSUANT TO 28 U.S.C. |
| | ) §§ 1915(e)(2) & 1915A |
| FRANCIS SEQUEIRA, GARY KAPLAN, | ) |
| Defendants. | ) |

## ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e) & 1915A

Before the court is *pro se* Plaintiff John Allen's prisoner civil rights complaint, brought pursuant to 42 U.S.C. § 1983. Plaintiff is incarcerated at the Halawa Correctional Facility ("HCF"), and is proceeding *in forma pauperis*. He complains that HCF Warden Francis Sequeira and Program Control Administrator Gary Kaplan violated the Eighth and Fourteenth Amendments, and the Americans With Disabilities Act of 1990, 42 U.S.C.§ 12101 *et seq*., ("ADA"), when they initiated, facilitated, or approved his transfer from HCF's Mental Health Housing Unit to its Close Custody General Population Housing Unit and then failed to respond to his grievances. *See generally*, Compl., Doc. No. 1.

For the following reasons, Plaintiff's Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(b)(2) and 1915A(b). Plaintiff is granted leave to amend those claims that are dismissed without prejudice on or before June 8, 2015.

## I. BACKGROUND

Plaintiff states that HCF inmates with mental health issues or illness are housed separately from other inmates, in HCF's Mental Health Housing Unit. Compl., Doc. No. 1, PageID #2. Plaintiff says that he has mental health issues, and prior to his recent transfer, he was housed in the Mental Health Housing Unit, Module C. *Id.* Plaintiff claims that Kaplan recently transferred him from the Mental Health Housing Unit to the "Close Custody, General Population Housing Unit, Module B," after Plaintiff was involved in a fight with another inmate. *Id.* Plaintiff claims that Kaplan then failed to respond to his grievance regarding this transfer, Control No. 175524. *Id.* at PageID #3. Plaintiff further claims that Warden Sequeira failed to (1) respond to his second grievance, Control No. 175525; (2) respond to his March 31, 2015 letter; and (3) intervene in his allegedly illegal transfer. *Id.*, PageID #3.

It is unclear in what capacity – individual, official, or both – that Plaintiff names Kaplan and Sequeira. Plaintiff seeks declaratory judgment that Defendants

2

violated his rights, injunctive relief transferring him back to the HCF Mental Health Unit, compensatory damages, and other relief deemed just and equitable.

## II. LEGAL STANDARD

The court must screen all civil actions brought by prisoners relating to prison conditions or seeking redress from a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). Complaints or claims that are frivolous, malicious, fail to state a claim, or seek relief from a defendant who is immune from such relief must be dismissed. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court must construe a *pro se* complaint liberally, accept all allegations of material fact as true, and construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Leave to amend should be granted if it appears possible for the plaintiff to correct the defects in his or her complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *but cf., Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013) (holding that the district court has discretion to dismiss a pro se complaint without leave to amend when "it is clear that the complaint could not be saved by any amendment").

### III. DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir.

4

2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

## A. Immunities and Injunctive Relief Under § 1983

It is unclear in which capacity Plaintiff names Defendants. So that he may effectively amend his Complaint, he is notified that defendants named in their official capacities are not persons subject to suit under § 1983. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70 (1989); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). Further, "[t]he Eleventh Amendment bars suits against a state or its agencies, regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity." *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005) (quoting *Yakama Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999)), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). The only exception is "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." *Id.* (quoting *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000)); *see Ex parte Young*, 209 U.S. 123 (1908).

Plaintiff's request for declaratory relief is subsumed by his request for damages. *See Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005) ("And

because his claim for damages necessarily entails a determination whether the officers' alleged conduct violated his rights, his separate request for declaratory relief is subsumed by his damages action.").

**B.      Fourteenth Amendment: Due Process Claims**

Plaintiff asserts that Kaplan and Sequeira violated his rights to due process under the Fourteenth Amendment by: (1) denying him notice and an opportunity to be heard before transferring him from the Mental Health Housing Unit to the Close Custody General Population Housing Unit; and (2) failing to respond to his grievances.

The Fourteenth Amendment guarantees all citizens, including inmates, due process of law. U.S. Const. amend. XIV, § 1. The right to procedural due process arises only when a constitutionally protected liberty or property interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Courts therefore analyze procedural due process claims in two parts. First, a court must determine whether the plaintiff possessed a constitutionally protected interest sufficient to require due process. *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014). If a plaintiff possesses such an interest, the court compares the required level of due process with the procedures the plaintiff received. *Id.* A due process claim lies

only when the plaintiff has a protected interest and defendants' procedure was constitutionally inadequate. *Id.*

### 1. *No Right to Due Process Procedures Before Transfer*

Under the Due Process Clause, an inmate has no liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). That is, prisoners have no liberty interest in avoiding more adverse conditions of confinement. *Wilkinson*, 545 U.S. at 221-22; *see also Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985) (holding prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating the prisoner's due process rights). Inmates therefore have no freestanding constitutional right to be housed in a particular state, prison, unit, or cell within a prison when that housing placement does not affect the term of his or her incarceration. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983) (holding no liberty interest to incarceration in a particular state or protection from transfer from one institution to another); *Meachum*, 427 U.S. at 224-25 (holding no liberty interest to incarceration in a particular prison within a state). Plaintiff has

no freestanding liberty interest to remain in the Mental Health Housing Unit or to prevent his transfer to any other unit within or without HCF.

State law may also create liberty interests, but "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84. The Ninth Circuit recently observed, "*Sandin* and its progeny made this much clear: to find a violation of a state-created liberty interest the hardship imposed on the prisoner must be 'atypical and significant . . . in relation to the ordinary incidents of prison life.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013) (quoting *Sandin*, 515 U.S. at 483-84). Under *Sandin*, Plaintiff may only show a protected state-created liberty interest by demonstrating that his transfer from the Mental Health Housing Unit to the Close Custody General Population Housing rises to the level of an "atypical and significant hardship." *Sandin*, 515 U.S. at 483-84; *Chappell*, 706 F.3d at 1064.

"There is no single standard for determining whether a prison hardship is atypical and significant" and analysis under this standard requires "case by case, fact by fact consideration." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks omitted). Courts must examine a "combination of

conditions or factors" to determine whether an "atypical and significant hardship" exists. *See Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). These include:

> (1) whether the conditions of confinement 'mirrored those conditions imposed upon inmates in analogous *discretionary* confinement settings, namely administrative segregation and protective custody[;]' (2) the duration and intensity of the conditions of confinement; and (3) whether the change in confinement would 'inevitably affect the duration of the prisoners sentence.'"

*Chappell*, 706 F.3d 1064-65 (citation and internal quotation marks omitted) (emphasis in original).

Plaintiff provides no comparison of the conditions of confinement in Close Custody General Population Housing, to those in administrative segregation, protective custody, or even to the Mental Health Housing Unit, suggesting atypical and significant hardship. *See Wilkinson*, 545 U.S. at 222-223; *Myron*, 476 F.3d at 718. Although he concludes that his transfer may affect his ability to receive mental health care, Plaintiff alleges no specific facts showing that he has been denied such care, or that other inmates in Close Custody General Population Housing are routinely denied mental health treatment. That is, Plaintiff details nothing showing that the duration or intensity of the conditions of confinement in Close Custody General Population Housing rise to the level of atypical and significant hardship, or that his transfer will affect the duration of his sentence.

Moreover, the denial of mental health care should be addressed under the Eighth Amendment's prohibition against cruel and unusual punishment, rather than as support for a due process claim. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Because Plaintiff fails to allege a federal or state-created liberty interest that entitles him to due process before transfer, he fails to state a due process claim related to his transfer from one prison housing unit to another, and this claim is DISMISSED with leave granted to amend.

### 2. *No Right to Response to Grievance*

Plaintiff next alleges that Kaplan and Sequeira deprived him of due process when they failed to respond to his grievances and letter. This does not state a claim. *See Wise v. Wash. Dep't of Corr.*, 244 F. App'x 106, 108 (9th Cir. 2007) (stating, "an inmate has no due process rights regarding the proper handling of grievances"); *Morgan v. Chakmakian*, 2011 WL 839136, at *5 (C.D. Cal. Jan. 26, 2011) ("[T]he mere participation of prison officials in plaintiff's administrative

appeal process is an insufficient basis on which to state a federal civil rights claim against such defendants."), *adopted by* 2011 WL 837738 (C.D. Cal. Mar. 3, 2011). Plaintiff has no liberty interest in a response to his grievances or letter from Kaplan or Sequeira, and this claim is DISMISSED with leave granted to amend.

**C.     Eighth Amendment Claim**

Under the Eighth Amendment, prison officials must provide inmates with basic human needs while in custody, including "food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). Medical care includes both mental and physical health. *See Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

To prevail on an Eighth Amendment denial of medical care claim, a plaintiff must satisfy "an objective standard--that the deprivation was serious enough to constitute cruel and unusual punishment--and [also] a subjective standard--deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)) (internal citations and quotation marks omitted), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

Objectively, a plaintiff must allege a "serious medical need," such that the failure to provide treatment could result in further injury or cause unnecessary and

wanton infliction of pain.  *Jett v. Penner*, 439 F .3d 1090, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1978)).  Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).

Subjectively, a prison official is deliberately indifferent only if he or she "knows of and disregards an excessive risk to inmate health and safety."  *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004)) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)) (internal quotation mark omitted). This entails "more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (internal quotation mark omitted).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Prison officials are deliberately indifferent when they "deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.

1988).  Finally, the plaintiff must prove that he was harmed, although the harm need not be substantial.  *Jett*, 439 F.3d at 1096.

The Court accepts that Plaintiff has a serious medical need--mental illness--requiring mental health care and treatment.  Plaintiff's allegations, however, are insufficient to show that Kaplan or Sequeira acted with deliberate indifference to his serious medical needs, because he fails to plead facts that they took affirmative acts intended to unnecessarily delay or deny him mental health care when they transferred him to Close Custody General Population Housing.  *See Estelle*, 429 U.S. at 105-06; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff admits Kaplan transferred him because he fought with another inmate; he alleges no facts showing Kaplan did so with knowledge that this would delay mental health care to Plaintiff.  Plaintiff alleges no facts showing *how* this transfer denied or delayed him mental health care, *when* this alleged delay or denial took place, or *who* was immediately responsible for allegedly denying his request for mental health care.  Plaintiff does not claim his medication was discontinued, compare the treatment he received in the Mental Health Unit to that in the General Population Unit, or explain what authority Kaplan or Sequeira had regarding the provision of mental health care at HCF.  Finally, Plaintiff describes no injury or harm that he suffered when he was transferred from one unit to another.  It appears

Plaintiff is merely speculating that he *may* receive lesser mental health care in the General Custody Housing Unit than in the Mental Health Housing Unit, and may suffer harm. The Complaint itself is bereft of facts describing the specific manner in which Kaplan and Sequeira denied Plaintiff mental health care when he was transferred.

As such, Plaintiff fails to set forth sufficient non-conclusory facts that demonstrate he is entitled to relief on his Eighth Amendment claim, as required by Rule 8(a). Instead, the Complaint contains the type of conclusory allegations of liability found to be insufficient for purposes of stating a claim, even under the relaxed pleading standards of Rule 8. *See Iqbal*, 556 U.S. at 678. Plaintiff's Eighth Amendment claim is DISMISSED with leave granted to amend.

**D.  ADA Claim**

Title II of the ADA, which applies to prisoners, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must allege that: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he

was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

Plaintiff's ADA claim is defective for several distinct reasons. First, although "[t]he ADA prohibits discrimination *because* of disability," it does not provide a remedy for "inadequate treatment *for* disability." *Simmons v. Navajo Cnty, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ( "[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. . . . The ADA does not create a remedy for medical malpractice.")). Plaintiff alleges that he was transferred from the Mental Health Housing Unit, and suggests there is or will be a failure to treat his mental health needs. He does not allege this denial has happened yet. Plaintiff alleges no discriminatory acts, and makes no allegations that he was excluded from any program or service, or that HCF has a policy to deny accommodation or otherwise discriminate against prisoners who require mental health care. The alleged inadequate treatment of Plaintiff's mental illness disability is insufficient to sustain a claim under Title II of the ADA.

Second, the Complaint contains no factual allegations that support an inference of intentional discrimination. That is, Plaintiff fails to plead any facts suggesting that Kaplan and Sequeira were motivated by discriminatory animus based on his mental illness. *See Lovell v. Chandler*, 303 F.3d 1039, 1056–57 (9th Cir. 2002) (plaintiff must establish intentional discrimination; *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (holding that plaintiff must show that exclusion from services was due solely to disability). Rather, Plaintiff admits he was transferred from the Mental Health Unit for fighting with another prisoner, not due to his disability. Such a claim makes no logical sense – that a mentally ill prisoner would be transferred from the Mental Health Unit because of his mental illness, and not for causing a disruption. Plaintiff's ADA claim against Kaplan and Sequeira in their official capacities is DISMISSED with leave granted to amend.

Third, Plaintiff may not recover damages under the ADA from an individual state actor, or indeed obtain any relief from a public actor in his individual capacity. *See Garcia v. SUNY Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). To the extent Plaintiff alleges this ADA claim against Kaplan and Sequeira in their personal capacities, it is DISMISSED with prejudice. *See Thomas v. Nakatani*, 128 F. Supp.2d 684, 691-93 (D. Haw. 2000).

## IV. **LEAVE TO AMEND**

Plaintiff's Complaint is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1). He may file an amended complaint on or before June 8, 2015 to cure the deficiencies in those claims that have been dismissed with leave to amend.

Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading and the court will not refer to the original pleading to make any amended complaint complete. Defendants not named in the caption and claims not realleged in an amended complaint may be deemed waived.[1] *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). An amended complaint generally supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Each claim and the involvement of each Defendant must be sufficiently alleged in the amended complaint. Plaintiff is notified that he must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he decides to amend his pleading.

## V. **28 U.S.C. § 1915(g)**

---

[1] Claims dismissed without leave to amend need not be re-pled in an amended complaint to preserve them for appeal. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (*en banc*). However, "claims that have been dismissed with leave to amend and are not re-pled in the amended complaint will be considered waived." *Id.*

If Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order on or before June 8, 2015, he is notified that this dismissal may later count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). A prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI. **CONCLUSION**

IT IS HEREBY ORDERED that:

(1) The Complaint is DISMISSED in its entirety for failure to state a claim. Specifically, Plaintiff's § 1983 claims against Kaplan and Sequeira in their individual capacities, as alleged under the Eighth and Fourteenth Amendments, are DISMISSED without prejudice and with leave to amend. Plaintiff's § 1983 claims for damages against Kaplan and Sequeira in their official capacities are DISMISSED with prejudice.

Plaintiff's ADA claims against Kaplan and Sequeira in their official capacities are DISMISSED without prejudice and with leave to amend. Plaintiff's ADA claims against Kaplan and Sequeira in their individual capacities are DISMISSED with prejudice.

(2) Plaintiff may file an amended complaint curing the deficiencies noted above on or before **June 8, 2015.** Failure to timely amend the Complaint and cure its pleading deficiencies may result in **DISMISSAL** of this action for failure to state a claim, and may later be counted as a strike pursuant to 28 U.S.C. § 1915(g).

(3) The Clerk of Court is directed to mail Plaintiff a form prisoner civil rights complaint to assist him in complying with the directions in this Order.

IT IS SO ORDERED.

DATED: May 7, 2015 at Honolulu, Hawaii.



Derrick K. Watson
United States District Judge

---

*John Allen, v. Francis Sequeira, et al.*; Civ No. 15-00152 DKW/RLP; ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A

*Allen v.Sequeira, et al.*, 1:15-cv-00152 DKW/RLP; scrng 2015; J:\PSA Draft Ords\DKW\Allen 15-152 dkw (trsf fr. ment. hlth unit).wpd